McKinney, J.,
delivered the opinion of the court.
This was an action of ejectment in the circuit court of Roane.
The facts, necessary to present the question submitted for our determination in this case, appear to be : That Wyly Tuten, the father of the lessors of the plaintiff, (who was a white man,) at an early day intermarried with, an Indian woman, a native of the Cherokee nation, by whom he had a daughter, named Sarah, who is still living. For many years preceding the treaty of 1817, said Wyly Tuten resided with the Cherokee tribe of Indians, and was recognized by them as one of their nation, and as entitled to all the rights and privileges of a native Indian. Under the treaties of 1817 and 1819, he registered his name in the office of the Cherokee agent for a life estate reservation in the section of land sued for in this action, His Indian wife died, and he afterwards, between the years 1812 and 1816, married a white woman, of wffiich latter mar *109 riage, the lessors of the plaintiff are the issue. After the last marriage, he still continued, (with his family, including his Indian daughter of the first marriage,) to live with the Chero-okee Indians, within the territory ceded to the United States, and on the section of land now in dispute, until his death, which occurred in the year 1842.
Upon this state of facts, the question for our determination is, in whom did the estate in remainder vest upon the determination of the life estate of Wyly Tuten ? Did it vest in Sarah Tuten alone — under whom the defendants claim — as they insist; or did it vest jointly in her and the lessors of the plaintiff, as tenants in common — as the counsel for the plaintiff insists ?
The solution of this question depends upon the proper construction of the eighth article of the treaty of 1817, which is as follows : “And to each and every head of an Indian family residing on the east side of the Mississippi River, on the lands that are now, or may hereafter be, surrendered to the United States, who may wish to become citizens of the United States —the United States do agree to give a reservation of six hundred and forty acres of land, in a square, to include their improvements, which are to be as near the centre thereof as practicable ; in which they shall have a life estate, with a reversion in fee simple to their children, reserving to the widow her dowrer; the register of whose names is to be filed in the office of the Cherokee agent,” &c.
This article of the treaty of 1817 was intended for the benefit of native Cherokee Indians, and by its terms, perhaps, would include no other person as the “ head of an Indian family.” But this court in construing this article — in view of the policy of the treaty — has held, that a white man, a citizen of the United States, by marrying an Indian wife, taking up his residence among the Cherokee nation of Indians, and identifying himself with them, is constituted the “ head of an In *110 dian family,” within the meaning and provision of the article, 3 Yerg. 452; 2 Yerg. 432, 450. This construction, we think, is warranted by reasons of obvious policy, but perhaps it is going quite as far as, upon any sound principle of construction, can be j ustified. And upon this construction of the article, it clearly follows, that Wyly Tuten was vested with a life estate in the tract of land in question; and it as clearly follows, that on the determination of such life estate, the estate in remainder vested in Sarah, the only child of his Indian wife. His right to a life estate reservation, was alone in virtue, and by force, of his marriage with an Indian woman of the Cherokee tribe. This alone constitutes him the “ head of an Indian family,” and brings him within the provision of the treaty ; and the children born of such Indian wife are alone entitled to the estate in remainder. The children of a marriage with a white woman, either previous or subsequent to the marriage with the Indian woman, are neither within the letter nor policy of the treaty, and in no event can they have any interest in the estate in remainder. So his Honor, the circuit judge, instructed the jury, and the judgment will be affirmed.